IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

SEKISUI TA INDUSTRIES, LLC

:

    v.                    :          Civil Action No. DKC-08-2634

:

QUALITY TAPE SUPPLY, INC.

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion to dismiss filed by Defendant Quality Tape Supply, Inc. (Paper 5). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be denied, but the proceedings will be stayed while the parties undertake mediation.

**I. Background**

Plaintiff Sekisui TA Industries, LLC is the world's largest manufacturer of water-based acrylic packaging tape. Defendant Quality Tape Supply was a long-time customer of Plaintiff and purchased packaging tape from Plaintiff for resale to end users. In late 2005, Defendant owed Plaintiff $167,711.54 for goods that Plaintiff had previously delivered. On December 28, 2005, Defendant entered into an unsecured Promissory Note Agreement ("PNA") with Plaintiff pursuant to which Defendant agreed to pay Plaintiff the outstanding balance for the goods it had purchased, plus interest of 6.5%, over 60 months. The PNA included a loan acceleration clause which permitted Plaintiff to declare the entire

balance of unpaid principal, along with accrued interest, payable immediately if Defendant made a payment more than 30 days late. (Paper 1, at 2-3).

Defendant made payments in accordance with the PNA until December 2007, when Plaintiff and Defendant attempted to renegotiate the agreement's terms. Although the parties drafted a new PNA with terms more favorable to Defendant, Defendant never executed the agreement. Defendant made one additional payment to Plaintiff under the original PNA in January 2008, but failed to make the required payments in February and March 2008. On April 3, 2008, Plaintiff notified Defendant that it was invoking the loan acceleration clause and requiring that Defendant immediately pay the balance of the debt underlying the PNA - an amount then totaling $106,322.22. Defendant refused to pay. (*Id.* at 3).

In January and February 2008, Defendant purchased additional goods from Plaintiff valuing $38,386.45. This purchase was not subject to the PNA. Plaintiff shipped the goods to Defendant, who accepted them and the related sales invoices. Defendant did not pay for these goods. (*Id.*)

On October 7, 2008, Plaintiff filed an action in this court against Defendant, based on diversity jurisdiction, alleging (1) breach of contract based upon the PNA; (2) breach of contract based upon the January and February 2008 sales invoices; (3) an account

stated for the balance underlying the PNA; and (4) an account stated for the January and February 2008 sales.  (*Id.*)

On November 10, 2008, Defendant filed a motion to dismiss and a request for a hearing.  (Paper 5).

## II.  Analysis

Defendant raises the following arguments: (1) Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction; and (2) Plaintiff's complaint should be dismissed for failure to state a claim for relief.  In so doing, Defendant argues that the PNA contains a provision requiring mediation of all disputes and that both the validity of the PNA itself and the balance underlying it were in dispute when Plaintiff filed this action with the court.  (Paper 5).

## A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1).  The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  The

court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768. Indeed, the district court may raise the issue of subject matter jurisdiction *sua sponte*. *Andrus v. Charlestone Stone Prods. Co., Inc.*, 436 U.S. 604, 608 n.6 (1978). "[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

### 1.   Amount in Controversy

Defendant argues that the court lacks subject matter jurisdiction over this case for two reasons. First, Defendant contends that Plaintiff has not established that the amount in controversy exceeds $75,000, the minimum amount required for diversity jurisdiction. Instead, Defendant claims that the amount ultimately in dispute may be far less than that alleged by Plaintiff. In the alternative, Defendant argues that the amount in controversy is only $38,386.45, the total of the January and February 2008 sales invoices, because Count I must be dismissed for Plaintiff's failure to mediate prior to bringing this action. (Paper 5, at 3-5).

In response, Plaintiff counters that three of the four counts in the complaint are not based on the PNA and thus do not require mediation. Plaintiff instead argues that Counts II-IV are based on

causes of action entirely unrelated to the PNA.  As a result, Plaintiff contends that even if the court dismisses Count I for failure to mediate, at least $144,708.67 will remain in controversy in Counts II-IV, thus satisfying the requirement for diversity jurisdiction. (Paper 6, at 4-6).

It is well-established that the plaintiff's complaint determines the amount in controversy for purposes of diversity jurisdiction.  As the United States Court of Appeals for the Fourth Circuit reiterated:

> The black letter rule "has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in 'good faith.'" *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961).

*Choice Hotels Int'l, Inc. v. Shiv Hospitality, LLC*, 491 F.3d 171, 176 (4th Cir. 2007).  Judge Blake explained the analysis as follows:

> Generally, the amount requested in the complaint determines the amount in controversy. *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993)("The general federal rule is to decide the amount in controversy from the complaint itself.")(citing *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961)); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993) (citing *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 513 (2d Cir. 1957)).

*Momin v. Maggiemoos Int'l, LLC,* 205 F.Supp.2d 506, 508-09 (D.Md. 2002).  Indeed, to justify dismissal in a diversity case for failure to meet the amount in controversy requirement, "it must

appear to *a legal certainty* that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)(emphasis added).

Here, Defendant has not provided any indication that Plaintiff alleges the amount in controversy in bad faith or that it is clear to a legal certainty that Plaintiff will recover less than the $75,000 jurisdictional minimum. As such, the amount in controversy for purposes of diversity jurisdiction will be $144,708.67, the amount alleged in Plaintiff's complaint.

In addition, the context of the mediation clause in the PNA clearly indicates that it applies only to disputes arising from that agreement, as the clause itself is embedded within the PNA and makes no reference to agreements created outside the PNA. (*See* Paper 5, at 3). Therefore, any requirement to mediate would apply only to claims based on the PNA. Counts II-IV of the complaint, however, are based on causes of action wholly unrelated to the PNA and independently allege an amount in controversy of at least $144,708.67. (*See* Paper 1). As a result, even if the court dismisses Count I, the remaining amount in controversy would nonetheless exceed the $75,000 jurisdictional minimum.

### 2.  Failure to Mediate

The mediation clause of the PNA states that "[i]f a dispute arises, the parties will try in good faith to settle it through mediation conducted by a mediator to be mutually selected. . . . If

the dispute is not resolved within 30 days after it is referred to
the mediator, either party may take the matter to court." (Paper
5, at 3). Defendant contends that Plaintiff's complaint should be
dismissed as Plaintiff has failed to mediate two disputes on which
the present action is based: (1) the validity of the PNA, and (2)
the balance underlying it.[1] (*Id.* at 3-4).

Plaintiff responds that Count I, the only cause of action
based on the PNA, should not be dismissed because the issues raised
by Defendant do not qualify as disputes under the mediation clause
and thus do not require mediation. Rather, Plaintiff asserts that
the court - not a mediator - should decide whether the PNA itself
is valid and that Defendant has concocted the "dispute" over the
PNA balance solely to delay resolution of the case. Plaintiff
further contends that Defendant's failure to pay the remaining PNA
balance does not qualify as a dispute because Defendant has not
contested its obligation to pay the underlying debt. Finally,
Plaintiff argues that, even if the court finds that these issues
constitute disputes which would be subject to the mediation clause,

---

[1] In its motion to dismiss, Defendant contends that
Plaintiff's failure to mediate requires the court to dismiss the
complaint pursuant to Fed.R.Civ.P. 12(b)(6). It is well-
established, however, that the court must disregard a contrary
party's allegations when deciding a motion to dismiss. *A.S. Abell
Co.*, 412 F.2d at 715. "A Rule 12(b)(6) motion . . . does not
generally invite an analysis of potential defenses to the claims
asserted in the complaint." *E. Shore Mkts. v. J.D. Assocs. Ltd.
P'ship*, 213 F.3d 175, 185 (4th Cir. 2000). Rather, the appropriate
manner in which to raise a party's failure to mediate is through a
12(b)(1) motion.

mediation would prove futile because the parties were not previously able to resolve their disagreements despite lengthy discussions.  (Paper 6, at 6-9).

    **a.   Applicable Law and Mediation**

Depending on whether the transactions at issue involve interstate commerce, either federal or state law can govern alternative dispute resolution agreements.  *See Am. Home Assurance Co. v. Vecco Concrete Constr. Co., Inc. of Virginia,* 629 F.2d 961, 963 (4th Cir. 1980).  In this case, assuming that "mediation" is within the ambit of "arbitration" in the Federal Arbitration Act ("FAA"), the FAA applies because, although neither party explicitly asserts that the disputed transactions involve interstate commerce, both parties implicitly acknowledge this fact given that they premise subject matter jurisdiction on diversity.  With regard to arbitration, federal and state laws generally mirror one another and Maryland courts interpret the Maryland Uniform Arbitration Act to be consistent with the FAA.  Thus, the outcome of the case would be the same regardless of which law governs.  *Holmes v. Coverall N. Am., Inc.*, 336 Md. 534, 541 (1994).  On the other hand, Maryland law seems more definite on the question of whether "mediation" falls within the ambit of the term "arbitration."  The clause of the PNA at issue here requires "mediation," not "arbitration."  At least one judge on this court has concluded that mediation is subject to the FAA: "Nevertheless, because the mediation clause in

the case at bar manifests the parties' intent to provide an alternative method to 'settle' controversies arising under the parties' . . . agreement, the mediation clause fits within the [FAA's] definition of 'arbitration.'" *Mortimer v. First Mount Vernon Indus. Loan Ass'n*, No. Civ. AMD 03-1051, 2003 WL 23305155, at *2 (D.Md. 2003)(internal citations omitted). Maryland's view is similar: *see Annapolis Prof'l Firefighters Local 1926 v. City of Annapolis*, 100 Md.App. 714, 725 (1994)(explaining that a written agreement to mediate would be enforced at least to the same extent as an agreement to arbitrate).

Plaintiff cites *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235 (11th Cir. 2008), for the proposition that mediation could actually increase the time and money spent in litigation and that the court should thus disregard the mediation clause altogether.  In *Advanced Bodycare Solutions*, the United States Court of Appeals for the Eleventh Circuit determined that mediation did not fall within the FAA's definition of arbitration. *Id.* at 1240.  To justify this conclusion, the court theorized that compelling a party to submit to settlement talks it did not desire to enter might ultimately increase the resources expended in litigation.  *Id.*

Unlike the Eleventh Circuit, the Fourth Circuit has not concluded that mediation is outside the scope of the FAA.  In fact, as indicated above, Maryland state and federal courts have

suggested that mediation does fall under the provisions of the FAA. *See Annapolis Prof'l Firefighters Local 1926*, 100 Md.App. at 725; *Mortimer*, 2003 WL 23305155, at *2.

For present purposes, the court will assume that mediation is a form of alternate dispute resolution that falls within the ambit of the term arbitration. Thus, the court must determine whether the parties agreed to resolve a certain matter through alternative dispute resolution. *See*, *e.g.*, *Dockser v. Schwartzberg*, 433 F.3d 421, 426 (4th Cir. 2006). To make that decision, courts rely on ordinary state law principles governing contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Maryland courts, emphasizing the legislative policy favoring the enforcement of alternative dispute resolution agreements, have long engaged "in a limited review to ensure that the dispute is arbitrable - i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food and Commercial Workers Int'l Union*, 289 F.3d 297, 301-02 (4th Cir. 2002). When parties adopt a broad arbitration clause, they "[evidence] an intent to arbitrate all disputes between [them;] issues relating to the negotiation and making of the contract, such as fraudulent inducement, are referable to arbitration, unless the arbitration clause itself was improperly transacted." *Holmes*, 336 Md. at 544. For this reason, courts have treated the issue of the

validity of an arbitration agreement in a contract separately from the merits of a dispute under such an agreement. *See id.* at 545.

Here, three issues appear to be in dispute: (1) the validity of the PNA itself; (2) Defendant's failure to pay the balance underlying the PNA; and (3) the amounts claimed due by Plaintiff under the PNA.[2] First, neither party contests the validity of the mediation clause. Defendant does contend that it signed the PNA under duress, but such an allegation goes to the validity of the contract as a whole, not to the validity of the mediation clause itself. Because neither party argues that the mediation clause was improperly transacted, this dispute does not require additional judicial interpretation and is thus appropriate for mediation. *See id.* at 544.

As to the second and third issues, the parties entered into a mediation clause sufficiently broad to cover such disagreements. Although the mediation clause does not include words such as "any" or "all" to qualify the type of disputes that must be mediated, the parties implicitly indicated that the clause would be interpreted expansively by writing a clause that contained no exceptions. *See*

---

[2] Plaintiff's argument that Defendant does not dispute its obligation to pay the remaining PNA balance is unconvincing. In its opposition, Plaintiff notes that Defendant has failed to make scheduled payments since December 2007 and that attempts to reach a "mutually agreeable arrangement" to resolve the issue (outside of mediation) have been unsuccessful. (Paper 6, at 8). These statements, as well as the dispute regarding the amount claimed due under the PNA, belie Plaintiff's claim that Defendant does not dispute its obligation under the PNA.

*Weatherly Cellaphonics Partners v. Hueber*, 726 F.Supp. 319, 321
(D.D.C. 1989)(holding that drafting an arbitration clause that
contained no exceptions later precluded plaintiff's argument that
a particular dispute did not fall within the provisions of the
clause).  As a result, the issues involving Defendant's failure to
pay the remaining PNA balance and the amount of the balance
actually owed constitute valid disputes for mediation.

     **b.   Futility of Mediation**

     Plaintiff contends that, even if the court finds that valid
disputes subject to mediation exist, enforcing the mediation clause
would be "wasteful and futile." (Paper 6, at 8).   Again, the
Eleventh Circuit decision, *Advanced Bodycare Solutions, LLC v.
Thione Int'l, Inc.*, 524 F.3d at 1240, is cited as authority.  While
it is true that neither party can be compelled to accept a
resolution in mediation, such efforts are often successful, and it
cannot be conclusively determined in advance that mediation in this
case would fail.  Furthermore, the process of mediation can help to
focus on the issues dividing the parties and may help to narrow
those issues, even if full resolution cannot be reached.

     **c.   Stay of Proceedings**

     After determining that issues appropriate for alternative
dispute resolution exist and that any related agreement should be
enforced, courts have declined to exercise subject matter
jurisdiction over such claims when a party has failed to undergo

such proceedings prior to filing an action in court. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 711-12 (4th Cir. 2001); *Thompson v. Neinaber*, 239 F.Supp.2d 478, 482, 486 (D.N.J. 2002). Instead, courts have either stayed the proceedings or dismissed the complaint entirely. *Choice Hotels Int'l, Inc.*, 252 F.3d at 712. When one or more claims in the complaint are not subject to alternative dispute resolution, courts have generally stayed the proceedings pending the completion of alternative dispute resolution. *Id.* It is well-established that dismissal is only appropriate when all of the claims involved in the action are subject to mandatory alternative dispute resolution. *Thompson*, 239 F.Supp.2d at 482.

As previously discussed, only Count I of the complaint is subject to the mediation clause of the PNA; the remaining counts are based on causes of action unaffected by the mediation clause. Because three of the four claims in the complaint are not subject to mediation, the court will stay the proceedings pending the completion of mediation in accordance with methods established in the PNA.

### B.   Appointment of Mediator

In its opposition, Plaintiff requests that the court appoint a qualified mediator if Count I is stayed or dismissed for Plaintiff's failure to mediate. (Paper 6, at 9). The mediation clause of the PNA, however, states that a mediator should be

13

"mutually selected" by the parties, and Defendant has not requested that the court appoint a mediator. (Paper 5, at 3).

At the request of either party, the FAA permits the court to appoint a neutral party to oversee alternative dispute resolution proceedings if the parties do not provide a specific method of doing so in their agreement. *See* 9 U.S.C. § 5 ("[I]f no method be provided [in the agreement], . . . then upon the application of either party to the controversy, the court shall designate and appoint an arbitrator"). The court has, through our magistrate judges, a panel of mediators available to assist in such proceedings. Accordingly, unless Defendant voices objection within seven days, the court will refer this case to a magistrate judge for alternative dispute resolution.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be denied, but the court will stay the proceedings pending mediation. A separate Order will follow.

                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge

14